STATE, Plaintiff, v. KOSLOFF FISHERIES, INC., Defendant.

Municipal Court, Toledo.

No. 640945.   Decided December 14, 1960.

*Mr. Mark McElroy*, attorney general, and *Mr. Jay C. Flowers*, assistant attorney general, for plaintiff.

*Messrs. Grossman, Hyman & Grossman*, of counsel, *Mr. Carl Levine* and *Mr. Harland M. Britz*, for defendant.

DRISCOLL, J. On August 18, 1960, this cause came on for trial on the issues joined on the allegations in the affidavit, purporting to charge a violation of Section 1533.63, Revised Code, and a plea of not guilty thereto. Upon conclusion of the evidence introduced on behalf of the State, counsel for the defendant moved for discharge and raised the question of the constitutionality of said statute.

Omitting the formal parts, the affidavit states in substance that on or about the 26th day of July, 1960, in Toledo, Lucas County, Ohio,

"Kosloff Fisheries, Inc., Detroit, Michigan, did unlawfully *ship* a certain quantity of fish, to wit: *yellow pickerel*, which were more than 10% *by weight undersize*, all contrary to Section 1533.63, Revised Code." (Emphasis supplied.)

Section 1533.63, Revised Code, provides:

"No person shall take, catch, or possess a whitefish of a weight less than one and three-quarters pounds, a sturgeon less than forty-eight inches in length, a catfish less than fourteen inches in length, a perch less than eight and one-half inches in length, a perch fillet of not less than five and five-eighths inches in length, a white bass or bullhead less than nine inches in length, a blue pike (Stizostedion glaucum), cisco, or sauger less than eleven inches in length, a blue pike fillet of a weight less than three ounces, a sauger fillet of a weight less than three ounces, a buffalo fish less than fifteen inches in length, *a yellow pike (Stizostedion vitreum) less than thirteen inches in length*, a yellow pike fillet of a weight less than five ounces, or a sucker or mullet less than twelve inches in length. All such fish caught or taken of a length less than that prescribed in this section shall be immediately released alive with as little injury as possible while the nets are being lifted or hauled. A carp or sheephead of any length may be taken, caught, or had in possession.

"No person shall release such undersized fish into a privately owned pond, lake, live car, or other enclosure or bring ashore a fish mentioned in this section with its head or tail removed or in such condition that its length or weight when taken or caught cannot be determined.

"This section does not prohibit the catching, taking, or

having in possession such undersized fish when caught or taken with hook and line, other than a trotline, but when such fish are so taken they cannot be bought or sold. The possession of or failure to return to the water alive, in the manner provided, a quantity of such undersized fish not exceeding in weight ten per cent of each boat load, catch, or haul brought ashore of any species of fish mentioned in this section, except sturgeon, is not a violation of this section.

"No person shall buy, sell, barter, give away, deliver, *ship*, or possess an undersized sturgeon, or any package, container, or quantity with more than ten per cent by weight of under-sized fish or any other species either round or filleted mentioned in this section. *No person shall buy, sell, offer for sale, or possess a fish caught or taken out of season or in any manner prohibited, or a fish caught or taken unlawfully outside this state. All fish brought into the state or country shall be subject to the laws of this state.*

"All fish taken or caught from Ohio waters shall be brought into an Ohio port for inspection. No person shall ship or carry any fish taken or caught from Ohio waters directly to a point outside the state."

The evidence is that on July 26, 1960, game protectors of the Division of Wildlife, State of Ohio, summarily investigated a shipment of fifteen boxes of fish at the depot of the Railway Express Company in Toledo, Lucas County, Ohio. Three of said boxes contained 10% or more undersized yellow pickerel. The said fish were caught in Alberta, Canada, and were shipped from the defendant's sales outlet in Detroit, Michigan, to the consignee, Dick's Fish Market in Columbus, Franklin County, Ohio. Although the three boxes of fish were taken by the complainant as evidence, no attempt was made to introduce them as exhibits. They were held by the complainant as though confiscated property.

The prosecution introduced testimony to support its contention that a pickerel, as alleged in the affidavit, is biologically a yellow pike, because both a pickerel and a yellow pike are encompassed in the generic classification (Stizostedion vitreum) stated in parenthesis in the statute. Apparently, the contention is that the parenthetical terms are a part of the effective portion of the statute, and that reasonably prudent persons are bound thereby—including the parenthetical references—to rea-

son that a yellow pickerel, as alleged in the affidavit, is a yellow pike, as named in the statute.

Indulging in the presumption that all professional witnesses, biologists, game protectors and even commercial fishermen may be able to comprehend the prohibitions of Section 1533.63, Revised Code, and the penalty, if any, for violations thereof, it is nevertheless essential that a statute designed to effect a criminal prosecution must be sufficiently clear to advise reasonably all persons of common intelligence what is prohibited and also the penalty, if any, for the violations thereof. In this case, said section fails to provide for, or to refer to, any penalty for a violation of the provisions thereof.

A statute creating a penal offense and which contains no penalty for its violations, has been held not enforceable. *State v. Schoepf,* 5 O. N. P., N. S., 161. In *McNary v. State,* 128 Ohio St., 497, the Supreme Court of Ohio held: "a criminal statute without a penalty is fundamentally nugatory."

In this connection, it was held in *Cleveland v. Baker,* 83 Ohio Law Abs., 502:

"An ordinance which forbids an act in terms so vague that men of common intelligence and understanding must guess as to its meaning and differ as to its application violates the first essential of due process of law."

The same standards of interpretation apply mutually to a statute and an ordinance.

The evidence in this case is that the three boxes of fish were shipped from Detroit, Michigan, and said fish were taken in Alberta, Canada. The defendant is charged with violating that part of Section 1533.63, Revised Code, quoted as follows:

"No person shall take, catch, or possess * * * a yellow pike (Stizostedion vitreum) less than thirteen inches in length, * * *."

"No person shall buy, sell, barter, give away, deliver, *ship,* or possess an undersized sturgeon, or any package, container, *or quantity with more than ten percent by weight of undersized fish* or any other species either round or filleted *mentioned in this section.* * * * *All fish brought into the state from another state or country shall be subject to the laws of this state.*" (Emphasis supplied.)

From the foregoing, it will be noted that the State intends to, and does control the fishing industry, not only in Ohio, but, by limiting, prohibiting, and confiscating shipments from outside of Ohio, also controls the fishing industry of foreign states and countries, notwithstanding the respective constitutions and laws of said foreign states and countries, in effect there to protect their respective natural resources of fish in their own domains, and notwithstanding the application of the principles of comity, pursuant to the full faith and credit clause in the United States Constitution, Article IV, Section 1, and notwithstanding the exclusive constitutional right of the Federal Government to regulate interstate commerce under the provisions of the United States Constitution, Article I, Section 8-3.

It is clear that the provisions of Section 1533.63, Revised Code, as enforced, particularly in this case, are designed to prohibit the serving on the tables of residents of Ohio, pickerel under thirteen inches, taken in foreign waters, and regardless of any justification for their being taken, as determined by the foreign sovereignties.

It is a cardinal principle of law that one who legally reduces wildlife to possession has a legal property right therein. The United States Constitution, Fourteenth Amendment, and the Ohio Constitution, Bill of Rights, Article I, Section 1, protects such persons in the enjoyment of such rights, in that they prohibit the State of Ohio from depriving any such person of his property right in such wildlife without due process of law. The Constitution of Ohio, Bill of Rights, Article I, Section 19, provides in the pertinent part thereof,

"Private property shall ever be held inviolate, but subservient to the public welfare."

Within constitutional limitations, the State of Ohio, as trustee for all the people, by legislative enactment, has the right in the reasonable exercise of its police power to regulate the taking of fish in all public waters within its jurisdiction. See *State* v. *Hanlon,* 77 Ohio St., 19; *Jackson* v. *State,* 13 O. C. C., N. S., 531; 84 Ohio St., 498; State v. Bayer, 93 Ohio St., 72.

It is stated in *State* v. *Hanlon,* 77 Ohio St., 19 at page 29:

"* * * It is obvious that in an enactment of police regula-

tions for the protection and preservation of fish and game, there is reposed in the legislature a very large discretion, and courts will not assume to interfere with the exercise of such discretion unless, in the particular case, it be made to clearly appear that the act assailed does not reasonably tend to accomplish the object for which it was passed."

In 8 Ohio Jurisprudence, 373, Paragraph 259, we find the following statement, supported by cases therein cited:

"As shown above, a determination by the legislature as to what is a proper exercise of the police power is not final and conclusive, but is subject to the supervision of the courts. In order to sustain legislation under the police power, the courts must be able to see that its operation tends, in some degree, to prevent some offense or evil, or to preserve public health, morals, safety and welfare; and if a statute discloses no such purpose, and has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the Constitution."

In this case, the protection of wildlife in the waters of the State of Ohio obviously was not in any way effected by the statute. Conversely, the provisions of Section 1533.63, Revised Code, assume to extend the police power and judicial jurisdiction of Ohio beyond the State of Ohio, in contravention of the principles stated in *State* v. *Bayer*, 93 Ohio St., 73, holding venue for a crime, if any, for shipping, is where the shipment was taken for delivery by the carrier. In application of the facts in this case, said statute deprives the people of the State of Ohio of the right to consume fish taken in waters foreign to the State of Ohio.

If the defendant committed a crime for violating Section 1533.63, Revised Code, so also the consignee and the carrier, as either principal or as aider and abettor, scienter or intent not being requirements. Moreover, it unreasonably and unwarrantedly takes from the defendant in this case its property right in the fish caught in Canada.

For the reasons stated herein, the Court finds Section 1533.63, Revised Code, is unconstitutional, and that the motion of defendant for discharge should be sustained.